

**BUCHANAN INGERSOLL PC**
William M. O'Connor (WO:5246)
Timothy J. Fierst (TF:3247)
One Chase Manhattan Plaza - 35th Floor
New York, New York 10005
(212) 440-4400

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

JOEL S. GREENE,

                Plaintiff,

        - against -

415 EQUIPMENT PARTNERS LLC, 415 WASHINGTON
AVE. PARTNERS LLC, RABINA REALTY, INC.,
MAIDAD RABINA, HCP-415 WASHINGTON AVE.
PARTNERS LLC, HACKMAN CAPITAL PARTNERS
LLC, RABINA-ROSE REALTY, INC., MICHAEL
HACKMAN and JONATHAN ROSE,

                Defendants.
-------------------------------------------------------------------x

Judge Hellerstein

# 06 CV 1917

**Index No.** ___Civ.____( )

**COMPLAINT**

Plaintiff Joel S. Greene ("Greene" or "Plaintiff"), by and through his attorneys, Buchanan

Ingersoll PC, as and for his Complaint, respectfully alleges as follows:

## THE PARTIES

1.    Plaintiff Greene is a resident of the Commonwealth of Massachusetts and is

engaged in the business of real estate investment and development.

2.    Defendant 415 Equipment Partners LLC ("415 Equipment") is a Delaware limited

liability company, owned by the defendant Maidad Rabina, whose members, upon information

and belief, include defendant Rabina, Jonathan Rose, and Michael Hackman, with a principal

place of business located at c/o Rabina Realty Inc., 670 White Plains Road, Suite 305, Scarsdale, New York.

3.      Defendant 415 Washington Ave. Partners LLC ("415 Washington Ave.") is a Delaware limited liability company whose principals, upon information and belief, are defendant Maidad Rabina, Jonathan Rose, and Michael Hackman, with a principal place of business located at c/o Rabina Realty Inc., 670 White Plains Road, Suite 305, Scarsdale, New York.

4.      Defendant Rabina Realty, Inc. ("Rabina Realty") is a New York Corporation owned and controlled by defendant Rabina, with a principal place of business located at 670 White Plains Road, Suite 305, Scarsdale, New York.

5.      Defendant Maidad Rabina ("Rabina") is a resident of the State of New York with a principal place of residence located at 53 Brookby Road, Scarsdale, New York. and is engaged in the business of real estate investment and development, who, through and with the defendants 415 Equipment, 415 Washington Ave. and Rabina Realty, owns and controls a certain piece of property located at 415 Washington Avenue, North Haven, Connecticut.

6.      Defendant HCP-415 Washington Ave. Partners LLC ("HCP-415") is a limited liability company owned and controlled by the defendant Rabina,  Upon information and belief, its members include Rabina and defendant Hackman Capital Partners LLC, with a principal place of business located at 11111 Santa Monica Blvd., Los Angeles, California.

7.      Defendant Hackman Capital Partners, LLC ("HCP") is a limited liability company owned and controlled by Michael Hackman, with a principal place of business located at 11111 Santa Monica Blvd., Los Angeles, California.

8.      Defendant Rabina-Rose Realty, Inc. ("Rabina Rose") is a New York corporation, whose owners, upon information and belief, include Rabina and Jonathan Rose, and whose principal place of business is located at 670 White Plains Road, Suite 305, Scarsdale, New York.

9.      Defendant Michael Hackman ("Hackman") is an individual and upon information and belief, a resident of the State of California.

10.     Defendant Jonathan Rose ("Rose") is an individual with a principal place of business located in Scarsdale, New York.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the matter in controversy, including the value of the rights being litigated, exceeds the sum of $75,000.00, exclusive of interests and costs.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), as defendant Rabina Realty, Inc. is a New York Corporation, defendant Rabina is a resident of the State of New York and because each of the defendants conduct business within this district. Additionally, the various acts or transactions constituting the offenses herein complained of including a disregard of fiduciary duties and self-dealing stemmed from conduct within this district.

## FACTUAL ALLEGATIONS

**Introduction**

13.     The Plaintiff Greene, through his own initiative, connections, and knowledge of the Connecticut real estate market located a real estate development opportunity with profit potential in the hundreds of millions of dollars (the "Real Estate Opportunity").

14.     Greene invited the defendant Maidad Rabina ("Rabina") into the Real Estate Opportunity, and made him a partner therein.

15.     Eventually, by manipulating the formalities of the ensuing transaction and to insure that Greene would have no claim on the purchased property (the "Property") or its large profit potential, Rabina insisted that Greene sign a complete release in favor of the Rabina Defendants, in exchange for payment of a percentage on the sale price of certain manufacturing equipment obtained as an incident to the Real Estate Opportunity (the "Equipment Contract"). In short Rabina engaged in self dealing and breached his fiduciary duty to Greene by keeping the Real Estate Opportunity, a partnership asset, for his own and for the benefit of the Rabina Defendants, Hackman and Rose.

16.     Unbeknownst to Greene, the other side of the transaction from the Real Estate Opportunity desperately wanted some of the manufacturing equipment back, and sued to get it. In the eventual settlement of that suit, the manufacturing equipment on which Greene had commission rights was transferred back to the real estate seller by Rabina, Hackman, Rose and the Rabina Defendants in return for a release of an option held by the seller on seventeen (17) strategic acres of the Property, a cash payment of $1,550,000, and other valuable consideration. Without the 17 acres, the Property which comprised Greene's Real Estate Opportunity had limited development potential. With those acres in the hands of Rabina, Hackman, Rose, HCP, Rabina Rose and the Rabina Defendants it could, and will, support a major commercial and residential development worth hundred of millions of dollars.

17.     Rabina realized that the Equipment Contract, which had been little more than a sham to get Greene's release on the Real Estate Opportunity, now required that Greene be paid many millions of dollars in commissions.

4

18.     Having hijacked Greene's Real Estate Opportunity and forcing Greene out of his own partnership, Rabina had no intention of allowing Greene to realize any significant share in the profits, even if guaranteed by contract.

## Greene's Real Estate Opportunity

19.     In December 2000, through personal contacts, Greene learned that the Property, a 160 plus acre manufacturing complex located at 415 Washington Avenue, North Haven, Connecticut, then owned by the Pratt & Whitney Division of United Technologies Corporation ("P&W"), was available for sale.  This information was not known to the general public.

20.     After confirming that it would soon be put on the market, Greene analyzed the Property.  He concluded that its location, size, and access to interstate highways gave the Property extraordinary potential as a major shopping and residential complex, with a projected value of many millions of dollars.

## Greene Brings Rabina in as a Partner

21.     After determining that the Property would be an attractive investment, Greene reached out to Rabina, a mutual acquaintance of a Real Estate associate, Michael Hackman, to explore the possibility of involving Rabina in financing Greene's purchase of the Property.

22.     Rabina toured the Property with Greene, after which Rabina was interested in proceeding to close the transaction.  Greene and Rabina agreed to pursue the Real Estate Opportunity with P&W together as partners.

23.     Rabina and Greene agreed that Rabina would negotiate and obtain the financing for the Real Estate Opportunity and Greene would finalize the Real Estate terms of the deal with the seller. Rabina agreed to finance the Real Estate Opportunity.

24.    Greene negotiated with P&W for the sale of the Property, which P&W never publicly marketed.

25.    Months after the start of negotiations, Rabina demanded that Jonathan Rose, ("Rose"), an owner of Rabina-Rose Realty, Inc., also be included as a partner in the purchase of the Property.  Rose, thus, became a partner in the Real Estate Opportunity.

26.    Because he knew Rabina through Hackman, Greene opined that Hackman have a percentage of the purchase of the Property as well.  Rabina resisted making Hackman or his company a partner in the Real Estate Opportunity, until, upon information and belief, after the closing when Hackman purchased his ten percent share.

27.    Upon information and belief Rabina issued shares to his family members, and possibly certain of his employees.

28.    The negotiations with P&W were extensive, initially almost entirely conducted by Greene, who introduced Rabina to P&W as his partner in the financing and purchase of the Property.

29.    Toward the conclusion of the negotiations, Rabina, by himself and through the Rabina Defendants, HCP and Rabina Rose, also negotiated some of the terms under which Greene, Rabina, Hackman and Rose would purchase the Property from P&W.

30.    Greene participated in all meetings and conference calls during the negotiations.

31.    Rabina handled the closing, which took place on December 28, 2001 (the "Closing"), a date on which Greene was in Florida.

32.    Within hours after the Closing, Rabina called Greene to inform him that the Closing had taken place and to congratulate him.   Rabina told Greene to come to his office in January, 2002, to discuss Greene's share of the deal.

6

33.     In mid-January, 2002, Greene met with Rabina, who advised Greene that Greene had no ownership or partnership interest in the Property.

34.     Ultimately, interest and control over the Property was vested in Rabina, the Rabina Defendant controlled by Rabina, HCP, Rabina Rose by Rabina, Hackman and Rose, and to the exclusion of Greene.

35.     Rabina refused to correct his improper conduct.

36.     Rabina conceded that Greene should have some share of the profit derived from acquisition of the Property.

## The Equipment Contract

37.     By virtue of the manner by which Rabina conducted the closing, Rabina, Hackman and Rose breached the partnership agreement they had with Greene for the Real Estate Opportunity and thus breached their fiduciary duties owing to Greene.

38.     In order to protect his own interests in the Property derived from the partnership's Real Estate Opportunity in both his name, the name of Hackman and Rose, and the name of the Rabina Defendants, Rabina plotted to obtain a global release from Greene by imbedding such release in a contract for the sale of the Equipment that had been acquired with the Property.

39.     A substantial amount of manufacturing and industrial equipment and other personal property (collectively the "Equipment") was on the Property.

40.     Prior to the closing, Greene advised Rabina that the Equipment was valuable and that Greene believed he could find buyers for the Equipment. Greene also informed Rabina that P&W would be compelled by Real Estate considerations to buy some of the Equipment back.

41.     During the months that followed, Rabina pursued Greene in an attempt to get Greene to settle their differences over the purchase of the Property.

42.     Rabina's attorney faxed a contract to Rabina and Greene.  Greene had not seen the contract nor any draft of any part of it prior thereto, which contained a broad release of all claims in any way relating to Rabina, the Rabina Defendants, Hackman, Rose, the Real Estate Opportunity and the Property deal itself.

43.     The contract set out an arrangement whereby Greene would be paid a percentage of the sales price of the Equipment  (the "Equipment Contract").

44.     Rabina insisted that Greene had to sign the Equipment Contract the night it was received in order for Rabina to close on the financing for the Property the following Monday.

45.      In order to protect his interests in the Property and to realize his expected partnership interests derived from the Real Estate Opportunity,  Greene executed the Equipment Contract.

46.     The Equipment Contract refers to an "Exhibit A" as being a list of equipment subject to the provisions of the Equipment Contract.   Greene was never shown a copy of purported "Exhibit A," nor upon information and belief, has it ever existed.

47.     As required by the contract whereby Greene, Rabina, Hackman and Rose purchased the Property arising from the Real Estate Opportunity, P&W was required to submit a final list of equipment and property it wanted to retain prior to or at the Closing.  P&W failed to do so.

48.     Therefore, all of the equipment located at the Property was included in the sale to the Greene-Rabina partnership.   In fact, Rabina acknowledged same under oath in another proceeding.

49.     Pursuant to the Equipment Contract, Greene received a  $350,000 share of proceeds of sale of some of the Equipment.

50.     Rabina never advised Greene that any of the Equipment was not owned by the partnership with Greene or was unavailable for sale under the Equipment Contract.

51.     Greene expended time, effort and money in selling the Equipment.

**Settlement with P&W**

52.     Pursuant to a lease executed at the closing of the purchase of the Property, P&W continued to use some of the Equipment on the Property.

53.     P&W also retained an option to re-purchase a seventeen acre tract of land on the Property from the Greene - Rabina - Hackman - Rose partnership.  Because of the strategic location of this seventeen acres, if the option were exercised by P&W it would dramatically decrease the development potential and the value of the land to Rabina, Hackman, Rose, the Rabina Defendants, HCP and Rabina-Rose.

54.     Subsequently, a dispute arose with P&W over which items of Equipment were included in the sale of the Property to the partnership.  Greene and Rabina consistently maintained the position that all of the equipment on the Property was included in the sale because P&W had an opportunity before closing to submit a list of equipment it wanted to keep and failed to submit such a list.

55.     On or about June 24, 2002, Rabina filed a lawsuit against P&W seeking a declaratory judgment that the partnership owned all of the Equipment.

56.     On August 30, 2002, Rabina, for the partnership, and P&W entered into an agreement settling their legal dispute (the "Settlement Agreement").

57.     In the Settlement Agreement Rabina gave P&W some of the remaining Equipment in exchange for P&W's termination of its option to purchase the seventeen acres of land within the Property, payment to the Greene - Rabina - Hackman - Rose partnership of $1.55

million as an adjustment to the purchase price, and other valuable consideration relating to P&W's leases.

58.     After the termination of the option on the seventeen acres, Rabina announced plans for a $500 million mixed residential and commercial development of the Property to the exclusion of his partner, Greene.

59.     Although the Equipment transferred by Rabina to P&W was Equipment in which Greene had a contractual right, Rabina, the Rabina Defendants, Hackman, Rose, HCP and Rabina Rose wrongfully excluded Greene from any share in the proceeds of the Settlement Agreement.

60.     The Property unencumbered by the option to the seventeen acres was worth many millions of dollars more than it was encumbered by the option. The Settlement, therefore, triggered Greene's compensation rights under the Contract.

61.     In an October, 2003 meeting with Rabina, Greene demanded payment under the Contract for the sale of the Equipment.  Rabina refused and intentionally repudiated the terms of the Equipment Contract.

62.     Rabina admitted that the Settlement was enormously valuable.

63.     Greene has not been compensated for the transfer of Equipment to P&W.

**Greene's Entitlement to a Commission on Additional Sales of Equipment**

64.     Certain Equipment was not transferred to P&W in the Settlement and has been sold subsequently by Rabina, Hackman, Rose or the Rabina Defendants, HCP and/or Rabina Rose.

65.     Greene has not been compensated for the sales of the Equipment as required by the Equipment Contract.

## FIRST CAUSE OF ACTION
### (Breach of Contract Against Rabina, Hackman, Rose and the Rabina Defendants)

66.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 65 with the same force and effect as if fully set forth herein.

67.     The Equipment Contract obligates Rabina, Hackman, Rose and the Rabina Defendants as a third party beneficiary thereunder to compensate Greene for "any and all sales" of the Equipment.

68.     To settle his lawsuit with P&W, on August 30, 2002, Rabina sold the Equipment back to P&W in exchange for P&W's termination of its lease and option to purchase the seventeen acres of land within the Property, $1.55 million and other valuable consideration.

69.     That transaction triggered Greene's right to be compensated pursuant to the Equipment Contract.

70.     Greene has demanded payment from Rabina on the Equipment Contract and Rabina has refused.

71.     There is due and owing to Greene the sum of $75 million as a result of the breach of the Equipment Contract.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty Against Rabina, Hackman and Rose)

72.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 71 with the same force and effect as if fully set forth herein.

73.     At all times relevant hereto, Rabina, Hackman and Rose owed a fiduciary duty to Greene as partners to conduct Real Estate to benefit the partnership and hold partnership assets and partnership opportunities for the benefit of the partnership.

11

74.     Rabina, the Rabina Defendants over which Rabina exercised complete control and the other defendants had complete physical control of the Equipment in which Greene held a percentage interest, and therefore owed Greene a fiduciary obligation with respect to the Equipment.

75.     The defendants Rabina, Hackman and Rose breached their fiduciary duties by (i) willfully and maliciously engaging in secret dealings adverse to Greene, (ii) converting partnership funds and assets to their own personal use to the exclusion of Greene, (iii) using partnership assets for their own benefit and own use and (iv) failing to act loyally and fairly in their dealing with and with respect to Greene, misrepresenting and concealing material facts from Greene.

76.     The Defendants' conduct as set forth above constitutes a breach of those fiduciary duties to Greene.

77.     As a result of the Defendants' breach of those fiduciary duties, Greene has been damaged by an amount equal to his share of the proceeds from the Property ($200 million) plus an amount from the proceeds of the Equipment ($75 million).

78.     Because of their intentional, wanton, blatant and callous conduct in derogation of Greene's rights and in violation of their fiduciary duties towards Greene, Defendants are also liable for punitive damages in an amount of $100 million in order to deter the Defendants from engaging in such conduct in the future.

## THIRD CAUSE OF ACTION
### (Promissory Estoppel Against Rabina and the Rabina Defendants)

79.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 78 with the same force and effect as if fully set forth herein.

80.     Rabina made a promise to Greene that he would receive a percentage of the sales price of the Equipment described in the Equipment Contract.  Rabina and the Rabina Defendants, controlled by Rabina personally, are third party beneficiaries under the Equipment Contract.

81.     Rabina did and should have expected to induce Greene's action and forbearance on that promise.

82.     Greene detrimentally relied on said promise by expending time and resources on his effort to sell the Equipment and by releasing the Rabina Defendants from any and all liability owed to him.

83.     Rabina breached his promise to Greene by selling Equipment covered by the Equipment Contract under the guise of the Settlement and did not compensate Greene for the same under the terms of their agreement.

84.     Because Greene detrimentally relied on Rabina's promise that he and the other Rabina entities would not breach the understood terms of the Contract, Greene seeks damages in an amount of $75 million.

### FOURTH CAUSE OF ACTION
**(Breach of the Covenant of Good Faith And Fair Dealing Against
Rabina, Hackman, Rose, the Rabina Defendants, Rabina Rose and HCP)**

85.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 84 with the same force and effect as if fully set forth herein.

86.     Every contract carries with it an implied covenant of good faith and fair dealing. Through its bad faith course of conduct described above, Rabina has thwarted Greene from receiving the benefit of his bargain.

87.     As a result of these defendants' breach of the implied covenant of good faith and fair dealing, Greene has been damaged in the amount of $75 million.

13

## FIFTH CAUSE OF ACTION
### (Accounting and Constructive Trust Against All Defendants)

88.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 87 with the same force and effect as if fully set forth herein.

89.     As a result of Rabina, Hackman, Rose, the Rabina Defendants, HCP and Rabina Rose's breach of their fiduciary duties as set forth above, Greene asks the Court to order an accounting requiring these defendants to account for all profits, property and benefits derived or received by them, directly or indirectly, as a result of such breaches.

90.     Further, as a result of the breach of the fiduciary duties, Greene further seeks from this Court the imposition of a constructive trust and a declaratory judgment declaring that all profits, benefits, monies or other things of value received by these defendants as a result of the breaches of their fiduciary duties be held in constructive trust for the benefit of Greene, who is damaged thereby.

91.     In further support of its request for the imposition of a constructive trust, Greene would show that (i) Rabina, Hackman, Rose, the Rabina Defendants, HCP and Rabina Rose have been unjustly enriched by property they obtained in contravention of their duties as fiduciaries; and (ii) Greene entrusted Rabina, Hackman and Rose with the Real Estate Opportunity for the benefit of the partnership, however, these defendants used this opportunity to enrich themselves and others affiliated with them.

92.     Said Defendants exercised control over the Real Estate Opportunity and the benefits derived therefrom to the exclusion of Greene, and accordingly these defendants should now be found to hold such property in constructive trust for Greene.

93.     Greene has no adequate remedy at law.

14

94.     As a result, Greene has been damaged in an amount to be determined at trial, and is entitled to a full accounting of the amounts due to him.

**WHEREFORE**, Greene seeks the following relief against all of the defendants, jointly and severally:

A)     compensatory damages in the amount of $275 million.;

B)     punitive damages in the amount of $100 million;

C)     an order requiring Rabina, the Rabina Defendants, Hackman, Rose, HCP and Rabina Rose to account to Greene all sales of the equipment including all transfers for good and valuable consideration and the imposition of a constructive trust on the profits, benefits, monies or other things of value received by these defendants as a result of the breaches of their fiduciary duties and arising from the Real Estate Opportunity;

D)     an order requiring Rabina to turn over to Greene all records in Rabina's possession relating to the Equipment;

E)     an order granting judgment against the defendants for damages in an amount to be determined at trial, plus costs and prejudgment interest; and

F)     such other legal and equitable relief as the Court may deem just and proper.


Dated: New York, New York
       March 8, 2006

                                        BUCHANAN INGERSOLL PC


                                        By:_____
                                            Timothy J. Fierst (TF:3247)
                                        Attorneys for Plaintiff
                                        One Chase Manhattan Plaza, 35th Floor
                                        New York, New York  10005
                                        (212) 440-4400