UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JOEL S. GREENE,

                              Plaintiff,

   - against -

415 EQUIPMENT PARTNERS LLC, 415 WASHINGTON AVE. PARTNERS LLC, RABINA REALTY, INC., MAIDAD RABINA, HCP-415 WASHINGTON AVE. PARTNERS LLC, HACKMAN CAPITAL PARTNERS LLC, RABINA-ROSE REALTY, INC., MICHAEL HACKMAN and JONATHAN ROSE,

                              Defendants.
-------------------------------------------------------------------x

Case No. 06 CV 1917 (AKH)


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(c)**


BUCHANAN INGERSOLL & ROONEY PC
One Chase Manhattan Plaza
35th Floor
New York, NY 10005
212-440-4400
Attorneys for Plaintiff Joel S. Greene

## **PRELIMINARY STATEMENT**[1]

The Plaintiff, Joel S. Greene ("Greene"), by his attorneys, Buchanan Ingersoll & Rooney PC, respectfully submit this memorandum of law in opposition to the collective defendants' motion for an order dismissing Greene's Complaint pursuant to Fed. R. Civ. P. 12(c).

Greene has properly asserted claims for breach of contract, breach of fiduciary duty arising out of a partnership arrangement, promissory estoppel, breach of the covenant of good faith and fair dealing and for an accounting and constructive trust.  As established by the Greene Declaration and the Nadolny Declaration, the defendants to this action clearly breached the terms of the contract entered into by Greene.  Moreover, notwithstanding the documents submitted by the defendants in support of their motion, the defendants engaged in a pattern of failing to disclose material information to Greene and a pattern of misconduct which would vitiate the contract and enable Greene to recover through his partnership rights.

Moreover, the release provision upon which the defendants rely does not release the defendants from the claims made by Greene in this action, and in fact, is void as a matter of law.  The defendants improperly sold equipment in which Greene had rights, thus triggering Greene's commission rights pursuant to his contract.  Moreover, the contract provides that the defendants shall indemnify Greene for all losses suffered.

Based upon the improper and willful misconduct of the defendants, Greene's claims against the individual defendants are wholly proper.  Accordingly, for the reasons set forth below, the defendants' motion should be denied.

---

[1] References to the contents and/or exhibits annexed to the July 26, 2006 Declaration of Joel S. Greene shall be as follows: ("¶ ___ to the Greene Decl." or "Ex. ___ to the Greene Decl.") and references to the contents of the July 26, 2006 Declaration of Joseph Nadolny also submitted in opposition to the defendants' motion shall be as follows: ("¶ ___ to the Nadolny Decl.").  References to exhibits annexed to the June 16, 2006 Affidavit of John R. Goldman, Esq., counsel for the defendants submitted in support of the pending motion, shall be as follows: ("Ex. ___ to the Goldman Aff.").  The terms as defined within the Greene Decl. shall be used uniformly throughout this memorandum of law.

## THE FACTS RELEVANT TO GREENE'S ACTION

The Court is respectfully referred to the Greene Declaration dated July 26, 2006 (the "Greene Decl.") and the Nadolny Declaration dated July 26, 2006 (the "Nadolny Decl.") for a statement of the facts relevant to this action and the pending motion.

## STANDARD OF REVIEW

In considering a Fed. R. Civ. P. 12(c) motion to dismiss a complaint, the standard of review is the same as a motion submitted under Fed. R. Civ. P. 12(b)(6). *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994). Thus, a court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Coleman v. B.G. Sulzle,* 402 F.Supp. 2d 403, 409 (N.D.N.Y. 2005); *Johns v. Town of East Hampton,* 942 F.Supp. 99, 105 (E.D.N.Y. 1996). A Rule 12(c) motion should be denied unless it appears beyond doubt that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Easton v. Sundram,* 947 F.2d 1011, 1014-15 (2d Cir. 1991) *cert denied*, 504 U.S. 911 (1992); *Johns v. Town of East Hampton,* 942 F.Supp. 99, 105 (E.D.N.Y. 1996).

In this regard, the court's function is merely to determine whether the complaint is legally sufficient, *not* to weigh the evidence which might be presented at trial. *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). In rendering its determination, the court may consider facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice may be taken. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts [deciding motions under Rule 12(b)(6)] routinely take notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the facts of such litigation and related filings"); *see also Brass v. American Film Technologies, Inc*., 987 F.2d 142, 150 (2d Cir. 1993) (Courts may consider

2

documents which plaintiff had knowledge of or which plaintiff relied upon in bringing the action).

## ARGUMENT

### POINT I

### THE RELEASE PROVISION OF THE EQUIPMENT CONTRACT DOES NOT BAR GREENE'S ACTION

The defendants improperly assert that the release provision in the Equipment Contract acts as a bar to Greene's action. The defendants assert that the consideration exchanged under the Settlement Agreement was merely an alternative to payment for the purchase of the Premises, Greene released any claims to share in the proceeds derived from the Premises, and released his claims against the defendants. It is submitted that this position is untenable as a matter of fact and law.

The release provision of the Equipment Contract specifically provides that

> . . . [I] hereby unconditionally and irrevocably waive any and all actual or potential rights and release 415, 415 Washington Ave. Partners LLC, Rabina Realty, Inc. and HCP-415 Washington Ave. Partners, LLC, and the agents, employees, affiliates, joint venture partners, and the respective officers, directors, members, partners and employees of each of the foregoing, and their respective attorneys (collectively, the "Released parties"), from any and all claims, causes of action or demands it may have against any Released Party *regarding the administration, marketing and sale of the [equipment] and the ultimate realized proceeds from the sale of the [equipment].* (emphasis added)

*See* ¶ 11.1 to the Equipment Contract, Ex. C to the Goldman Aff.

Pursuant to the express terms of the release provision, the release only operates to release the defendants from claims regarding the administration, marketing and sale of the equipment and the ultimate realized proceeds from such sale. The release does not operate as a bar to a

3

claim for a breach of the Equipment Contract itself as it relates to the dispute between the parties and Greene's entitlement to commissions thereunder.

Moreover, the asserted interpretation of the release provision of the Equipment Contract relief upon by the defendants violates public policy and would render the Equipment Contract void for a lack of consideration.

The defendants would have this Court adopt an interpretation of the release provision that grants the defendants *carte blanche* to breach the terms of the Equipment Contract with impunity, yet escape liability for their misconduct. Such an interpretation defies logic. Indeed, it is settled that parties cannot contract away liability for their own wrongful acts in violation of a contract. *Turkish v. Kasenetz,* 27 F.3d 23, 27-28 (2d Cir. 1994).

Moreover, such an interpretation of the release provision contradicts other provisions of the Equipment Contract itself. Indeed, the defendants in this action agreed to indemnify Greene for all damages and claims arising out of the Equipment Contract.

The Equipment Contract specifically provides that

> 415 agrees to indemnify defend and hold harmless Greene and his agents, employees, affiliates, joint venture partners, and the respective officers, directors and employees of each of the foregoing, and their respective attorneys (collectively the "Greene Indemnified Parties") from any and all liability, damages, losses, causes of action, or other claims (including attorneys' fees and other defense costs) arising from or asserted in connection with (i) the gross negligence or willful misconduct of 415, its directors, officers, employees, agents and representatives, (ii) incomplete or inaccurate information provided by or through 415, or any material information concerning the [equipment] . . .which 415 has misrepresented and/or failed to disclose and/or (iii) and  other act or omissions by or through 415 which causes liability to the Greene Indemnified Parties.

*See* ¶ 10.2 to the Equipment Contract, Ex. C to the Goldman Aff.

4

Considering the fact that the Equipment Contract itself contains the indemnification provision in favor of Greene, the release provision cannot operate to bar Greene's claims against the defendants for their misconduct in connection with performance of the Equipment Contract.

A.   **The Defendants' Misconduct and Concealment of Material Facts Renders the Release Provision Void**

When there are genuine issues as to the validity of a release, the defendants' motion to dismiss the Complaint because it is barred by the release will be denied. *NCC Industries, Inc. v. S.O. Textiles Co., Inc.,* 1974 WL 943 (S.D.N.Y. 1974) (copy of which is annexed hereto as Exhibit "1").  A release that was obtained by the concealment of material facts is defective. *Id.*

Facts material to the Equipment Contract were concealed from Greene by the Defendants.  Namely, while Defendants lured Greene into giving up his rights to the Premises in favor of the Equipment Contract, they surreptitiously planned to settle their claim against Pratt which existed as of the date of closing the purchase of the Premises.  *See* ¶¶ 37-42; 53-59 to the Greene Decl.

The Settlement Agreement which was entered into by the defendants with Pratt fraudulently affected Greene's rights in the Equipment.  Indeed, the defendants knew this fact and thus they required that the Settlement Agreement be under seal.  The transfer of the Equipment to Pratt under the terms of the Settlement Agreement was not in consideration for the purchase of the Premises, but was a sale of the Equipment for $1,500,000.00 plus a release of a valuable real estate option held by Pratt, a sale which was subject to the provisions of the Equipment Contract.  The value of the option released as consideration for the Equipment exceeded Thirty Million Dollars, thus triggering Greene's rights to compensation under the Equipment Contract and satisfying the "waterfall provisions" thereunder.  *See* ¶¶ 58-59 to the Greene Decl.

5

The fact remains that the dispute between the defendants and Pratt was in existence in December 2001. The defendants schemed to obtain Greene's release and execution in the Equipment Contract in March 2002. *See* ¶¶ 37-42; 53-59 to the Greene Decl. Thus, had Greene been aware of the fact that his rights to the Equipment were being affected by the dispute with Pratt, the terms of the Equipment Contract would have been vastly different. The defendants' concealment of these material facts should not be excused and they should not be permitted to hide behind the Equipment Contract or the release provision. Such misconduct triggers the indemnification provisions of the Equipment Contract. *See* ¶10.2 to the Equipment Contract, Ex. C to the Goldman Aff.

The defendants have conceded these facts and indeed have not submitted any factual evidence to the contrary in support of their motion. Therefore, based upon the misconduct and active concealment on the part of the defendants, the release provisions of the Equipment Contract are inapplicable and Greene's action should be sustained.

**B.**     **Defendants' Fiduciary Duties Owed to Greene Override the Release Provisions**

Even if the defendants did not conceal facts material to Greene to get him to sign the Equipment Contract, the release would still be invalid since the defendants owed Greene a fiduciary duty.

The defendants assert that *Krumme v. Westpoint*, 238 F.3d 133 (2d Cir. 2000) and *Nat'l Union Fire Ins. v. Walton*, 696 F.Supp. 897 (S.D.N.Y. 1988) are applicable to the issue, and would require the release be upheld. However, both of those cases involve contracts negotiated between adverse and unrelated parties.

The defendants fail to note that "Greene and Rabina agreed to pursue the Real Estate Opportunity with P&W together as partners." *See*. ¶ 22 to the Complaint, Ex. A to the Goldman

6

Aff. This agreement created certain fiduciary duties between the two, and it is well-established in New York that "[m]any forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. . . . Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928) (Cardozo, J.); see *also Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 465 (1989). As such, any agreement between partners is held to a different standard than one between two unrelated parties. Indeed, Greene and Rabina held each other out to be partners. *See* the Nadolny Decl.;   *See, Blue Chip Emerald v. Allied Partners*, 299 A.D.2d 278, 750 N.Y.S.2d 291 (1st Dept. 2002).

In *Blue Chip Emerald*, the plaintiffs and defendants participated in a joint venture where each owned 50% of an office building. After eight months, the defendants induced the plaintiffs to sell them their share in the building based on a total valuation of $80 million; two weeks later, the defendants sold the building to a third-party for $200 million. The defendants also induced the plaintiffs to sign a waiver similar to the one in the instant case, releasing the defendants from a broad set of claims.

In particular, the waiver stated that defendants were released from any claims relating to "the actual or projected value of the Property for sale or leasing or to any other matter affecting or related to the property." In holding that the waiver could not serve to release the defendants from liability, the court noted that it is well established that when a fiduciary in furtherance of its individual interests, deals with the beneficiary of the duty in a matter relating to the fiduciary relationship, the fiduciary is strictly obligated to make full disclosure of all material facts and to disclose all information that could reasonably bear on the beneficiary's consideration of the fiduciary's offer. *Blue Chip Emerald,* 299 A.D.2d 278, 279-280, 750 N.Y.S.2d 291, 294.

Had Greene realized that Rabina had no intention of allowing Greene to realize any significant share in the profits by self dealing in the Equipment, Greene would never have signed a contract containing a release provision such as in the Equipment Contract.  *See also TIC Holdings v. HR Software*, 750 N.Y.S.2d 425, 431 (N.Y. Sup. Ct. 2002) (". . . a release is ineffective to insulate a releasee from willful or intentional misconduct.")

## POINT II

### GREENE'S CLAIM FOR BREACH OF CONTRACT IS WHOLLY PROPER

Considering the fact that the release provision in the Equipment Contract is inapplicable to a case of breach of contract as in the case at bar, Greene has a valid claim for breach of the Equipment Contract.

Regardless of the term of art which the defendants attribute to the transfer of the Equipment to Pratt under the Settlement Agreement, the fact remains that the transfer of the Equipment for $1,500,000.00 cash plus the release of the real estate option was a "sale" envisioned by the Equipment Contract.

The Equipment Contract was executed after June 2002.  *See* Ex. D to the Goldman Aff. Greene's rights in and to the Equipment ripened by virtue of the Equipment Contract, executed in March 2002.  *See* ¶¶ 35-40 to the Greene Decl.

The Equipment Contract provides that Greene was to collect commissions for any and all sales of the Equipment.  *See* ¶ 5.3 to the Equipment Contract, Ex. C to the Goldman Aff. Certainly the dispute between the defendants and Pratt surrounded ownership of the Equipment, and the Connecticut Lawsuit, by the issuance of the restraining order, effectively removed Pratt's rights in the Equipment.  *See* Ex. 4 to the Greene Decl.

The defendants knew that the option to the seventeen acres of real estate held by Pratt was extremely valuable to the Premises. The defendants wanted that option released. Accordingly, the defendants bartered the sale of the Equipment to Pratt for the cash payment and the release of the option depriving Greene of his rights to the Equipment under the Equipment Contract. *See* ¶ 58 to the Greene Decl. Certainly, a barter transaction is considered a sale. The defendants have conceded this point and have provided no support for the proposition that this barter is a sale and a transfer of the Equipment for value.

Moreover, the Equipment Contract itself envisions an action as in the case at bar. The Equipment Contract specifically provides an indemnification to Greene for misconduct or the concealment of facts relative to the Equipment. *See* ¶ 10.2 to the Equipment Contract, Ex. C to the Goldman Aff.

The defendants cannot rely upon their assertion that Greene is limited to his Equipment rights by virtue of the alleged Exhibit A to the Equipment Contract. Greene steadfastly maintains that such exhibit was never shown nor was it a part of the Equipment Contract when he executed it. *See* ¶ 41 to the Greene Decl. Indeed, the defendants have not submitted any evidence to show that such exhibit was indeed "initialed" by Greene at the time of the execution of the Equipment Contract.

Moreover, Exhibit A to the Equipment Contract is subject to oral modification or modification by the conduct of the parties. *See* ¶ 14.1 to the Equipment Contract, Ex. C to the Goldman Aff. Indeed, the alleged Exhibit A was modified by the parties. *See* ¶¶ 50 and 52 to the Greene Decl. Accordingly, there is a course of conduct by the parties that shows Greene was compensated for the sale of Equipment which is not listed within the alleged Exhibit A.

9

Accordingly, by virtue of the fact that Greene's interest in the Equipment ripened before the Settlement Agreement, and his interest was not limited by the alleged Exhibit A, the defendants' transfer of the Equipment to Pratt under the Settlement Agreement triggered Greene's rights to compensation under the Equipment Contract.

A.     **Greene May Maintain this Action against the Individual Defendants**

Clearly, the Equipment Contract envisions this action against the individual defendants.

The Equipment Contract provides that indemnification will be provided in the case of an action arising from or asserted in connection with (i) the gross negligence or willful misconduct of 415, its directors, officers, employees, agents and representatives. *See* ¶ 10.2 to the Equipment Contract, Ex. C to the Goldman Aff. Thus, the Equipment Contract itself envisions this situation where the individual defendants, the driving forces behind the corporate defendants, would be subject to liability for their own misconduct.

If the individual defendants are alter egos of the signatory "corporate" defendants, an action for breach of contract should be sustained. *Campo v. 1st Nationwide Bank*, 857 F. Supp. 264, 270 (E.D.N.Y. 1994). Courts will pierce the corporate veil to hold individual defendants liable for contract damages where there is an absence of corporate formalities and a fraud or wrong has been committed against the plaintiff. *Kashi v. Gratsos*, 790 F.2d 1050, 1056-57 (2d Cir. 1986). The *Kashi* court found an absence of corporate formalities in defendant Standard Metropolitan Shipping Corporation ("SMSC"), where SMSC was incorporated in Panama, referred to as a "joint venture," and the principals of SMSC had agreed to a scheme for dividing the profits. *Id.* at 1051, 1057.

As with SMSC, the principals of 415 Equipment have not paid attention to corporate formalities. The company has not been incorporated, is owned by Rabina, and its members

10

include Rabina, Rose, and Hackman.  *See* ¶ 2 to the Complaint, Ex. A to the Goldman Aff. Defendant 415 Equipment also shares its place of business with defendants 415 Washington Ave. Partners, Rabina Reality, and Rabina-Rose Realty, indicating that these companies are run jointly. *See*  ¶¶ 3, 4 and 8 to the Complaint, Ex. A to the Goldman Aff.  Furthermore, the Complaint alleges that a wrong has been committed against Greene by 415 Equipment, as well as its individual owners.  Hence, Greene's action against the individual defendants is wholly proper.

## POINT III

### THE DEFENDANTS OWE GREENE A FIDUCIARY DUTY AS PARTNERS

Assuming, arguendo, that the Court limits Greene's ability to recover under the Equipment Contract by virtue of the release provision, Greene is entitled to recover damages from the defendants for their breach of their fiduciary duty based upon the misconduct in this action.

The defendants' only argument as to why Greene was not owed a fiduciary duty and is not entitled to the imposition of a constructive trust is that the defendants claim they never entered into a partnership with Greene.

A motion to dismiss claims for breach of fiduciary duty and constructive trust cannot be granted solely upon representations from a defendant that he never entered into a partnership with the plaintiff.  Whether or not parties intended to act as partners and entered into a confidential relationship are triable issues of fact. *Costello v. Cooper*, 1990 WL 9856, at * 5 (S.D.N.Y. 1990) (a copy of which is annexed hereto as Exhibit "2").

The Defendants offer no evidence that they did not intend to form a partnership.  Thus, the motion to dismiss the claims for breach of fiduciary duty and constructive trust should be

11

denied since the Complaint alleges all the facts necessary for the court to determine that the defendants entered into a partnership with the Greene.

A court may determine the existence of a partnership as a matter of law. *Bailey v. Broder*, 1998 WL 13827 (S.D.N.Y. 1998) (a copy of which is annexed hereto as Exhibit "3").  The finding of a partnership under New York law turns on "the intent of the parties (express or implied), whether there was joint control and management of the business, whether there was a sharing of the profits as well as a sharing of the losses, and whether there was a combination of property, skill or knowledge." *Bickhardt v. Ratner*, 871 F. Supp. 613, 620 (S.D.N.Y. 1994) (citing *Ramirez v. Goldberg*, 82 A.D.2d 850, 852, 439 N.Y.S.2d 959, 961 (2d Dep't 1981)).

In the case at bar, the parties intended to enter into a partnership.  Indeed, they held each other out as partners, and others relied upon this representation.  *See* the Nadolny Decl.   Both Rabina and Greene each agreed to assume responsibilities in jointly controlling and managing the business and participated together in meetings and conference calls during negotiations for the purchase of the Premises and the Equipment.   *See* ¶¶ 1-11 to the Nadolny Decl.

Until Rabina surreptitiously conducted the Closing in such a way that he breached his partnership with Greene and breached his fiduciary duty to Greene, Greene and the Defendants shared as partners the profits and losses and intended to do so in the future. *See*  ¶¶ 31-37 to the Complaint, Ex. A to the Goldman Aff.   Greene combined his knowledge of the Premises as well as his skills in negotiating and dealing with individuals in the real estate arena, with Rabina's ability to finance the purchase of the Premises.

Because the Complaint establishes sufficient facts to establish that a partnership existed, the Court should find a partnership as a matter of law.  The misconduct, therefore on the part of

12

Rabina, Hackman and Rose as partners in this transaction give rise to a valid claim for a breach of fiduciary duty.

Because Rabina held himself out to be Greene's partners, he should be estopped from arguing that no partnership existed. Under New York Partnership Law, when a person holds himself out to be a partner in an existing partnership, he is bound as a partner. N.Y. Partnership Law § 2; *see also Sitchenko v. DiResta*, 512 F. Supp. 758, 761 (E.D.N.Y 1981). Rabina continually represented himself as a partner in the Rabina-Greene-Hackman-Rose partnership and even introduced himself as Greene's partner to Pratt. *See* the Nadolny Decl. As such, the Defendants should be estopped from arguing that they were not Greene's partners.

### POINT IV

### THE EXISTENCE OF THE EQUIPMENT CONTRACT DOES NOT BAR A PROMISSORY ESTOPPEL CLAIM

The Defendants erroneously assert that Greene's promissory estoppel claim should be dismissed because of the existence of the Equipment Contract.

For their position, the defendants incorrectly rely upon *Clark-Fitzpatrick v. Long Island Rail Road*, 70 N.Y.2d 382 (1987).

However, in *Sternberg v. Walber 36th Street Assoc.*, 187 A.D.2d 225, 594 N.Y.S.2d 144 (1st Dept. 1993), the court held that a claim in contract and a claim in quasi contract may co-exist.

*Sternberg* is similar to the case at bar because the written contract did not "fully detail all applicable terms and conditions of the agreement between the parties. . ." *Sternberg*, 187 A.D. 2d at 227, 594 N.Y.S.2d at 145. In fact, that lack of detail is a fundamental point of contention between Greene and the Defendants.

13

To show promissory estoppel, a plaintiff must allege (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the promisee; and (3) proximately resulting in injury sustained by the party asserting the estoppel by reason of its reliance. *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 157 F.3d 956, 961 (2d Cir. 1997). All three events occurred, and Greene has clearly demonstrated the same.

First, Rabina made a promise to Greene that he would receive a percentage of the sales price described in the Equipment Contract. *See* ¶ 80 to the Complaint, Ex. A to the Goldman Aff. Second, Greene detrimentally relied on that promise by expending time and resources to sell the Equipment, which Equipment was surreptitiously removed from Greene by the misconduct and secret Settlement Agreement. *See* ¶ 81 to the Complaint, Ex. A to the Goldman Aff. Third, Greene expended time, effort and money in selling the Equipment and Greene has not been compensated for the sales of the Equipment as required by the Equipment Contract because the defendants sold the Equipment pursuant to the Settlement Agreement without notice to Greene as required by the Equipment Contract. *See* ¶ 51 and 65 to the Complaint, Ex. A to the Goldman Aff.

Therefore, Greene may properly maintain a cause of action for promissory estoppel.

### POINT V

### THE CLAIM FOR BREACH OF COVENANT OF GOOD FAITH IS SEPARATE AND DISTINCT FROM THE BREACH OF CONTRACT CLAIM

The defendants' motion to dismiss the claim for breach of the covenant of good faith and fair dealing must be denied because Greene has demonstrated in the Complaint that it is a separate cause of action from the breach of contract claim.

14

A claim for breach of the covenant of good faith should only be dismissed as duplicative when the good faith and fair dealing claim is not based on any facts other than those supporting its breach of contract claim. *B. Lewis Productions, Inc. v. Angelou*, 2005 WL 1138474 (S.D.N.Y. 2005) (a copy of which is annexed hereto as Exhibit "4").  Greene's Complaint, however, bases the claims on different facts.

The breach of contract claim is based on the defendants' nonpayment to Greene of the compensation due him under the Equipment Contract. *See*. ¶¶ 66-71 to the Complaint, Ex. A to the Goldman Aff.  The breach of the covenant of good faith and fair dealing claim is based on the defendants' "bad faith course of conduct" such as excluding Greene from negotiations and dealing with a sale of the Equipment in which Greene had an interest and bartering the Equipment in an attempt to intentionally cut Greene out of any profits.  Thus, the claims are not duplicative.

Furthermore, the defendants breached their covenant of good faith and fair dealing to Greene implicit in the Equipment Contract.  Parties to a contract are required to act in good faith in carrying out the actions envisioned by the contract. *D'Accord Financial Services, Inc. v. Metsa-Serla Oy*, 1999 WL 58916 (S.D.N.Y. 1999) (a copy of which is annexed hereto as Exhibit "5").  The Equipment Contract's terms envision a sale of the Equipment whereby Greene would receive a commission under a waterfall provision.  The defendants, however, acted in bad faith in attempting to circumvent the contract to exclude Plaintiff from any profits.  Thus, the defendants breached the covenant of good faith owed to the Plaintiff.

Additionally, the claim for breach of the covenant of good faith and fair dealing should not be dismissed as redundant of the claim for breach of contract because it also presents an alternative theory by which Greene may recover.  Plaintiffs may simultaneously allege alternate

15

theories of recovery. *AM Cosmetics Inc. v. Solomon*, 67 F. Supp. 2d 312, 322 (S.D.N.Y. 1999). Without conceding that the claims are mutually exclusive, which they are not, the claim for breach of the covenant of good faith would allow Greene to recover even in the event that the fact-finder were to determine that the Equipment Contract was not breached.

## **CONCLUSION**

Based upon the foregoing, it is respectfully requested that the defendants' motion for an order pursuant to Fed. R. Civ. P. 12(c) be denied in its entirety.

Dated: July 26, 2006                                     Respectfully submitted,

                                                                        /s/ *Timothy J. Fierst*
                                                                        BUCHANAN INGERSOLL & ROONEY, PC
                                                                        By:     William M. O'Connor (WO:5246)
                                                                                    Timothy J. Fierst (TF:3247)
                                                                        *Attorneys for Plaintiff*
                                                                        One Chase Manhattan Plaza, 35th Floor
                                                                        New York, New York  10005
                                                                        (212) 440-4400